## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN SMITH,         )
       **Plaintiff**     )     **C.A. 10-22 Erie**
                )
**v.**              )
                )     **Magistrate Judge Baxter**
**THE PENNSYLVANIA DEPARTMENT** )
**OF CORRECTIONS, et al.,**     )
         **Defendants.**    )

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I.    INTRODUCTION

### A.    Relevant Procedural History

On February 1, 2010, Plaintiff Steven Smith, a prisoner formerly incarcerated[2] at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against The Pennsylvania Department of Corrections ("DOC"); SCI-Albion; The State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"); and unnamed Defendants identified as "John Does" and "Jane Does." [ECF No. 8].  Plaintiff subsequently filed an amended complaint on June 7, 2010, dropping all of the original Defendants from the lawsuit and naming the following individual Defendants: Jeffrey

---

[1]

All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 6, 18, 26].

[2]

Plaintiff is no longer incarcerated and currently resides in Milton, Pennsylvania. (See ECF No. 61).

1

Beard, former Secretary of the DOC ("Beard"); Raymond Sobina, former Superintendent at SCI-Albion ("Sobina"); Nancy Giroux, Deputy Superintendent at SCI-Albion ("Giroux"); John Hall, Deputy Superintendent at SCI-Albion ("Hall"); Tammy Young, Unit Manager at SCI-Albion ("Young"); Maxine Overton, Health Care Administrator at SCI-Albion ("Overton"); Mark Baker, Medical Director at SCI-Albion ("Baker"); Daniel Telega, Physician Assistant at SCI-Albion ("Telega"); Tammy Mowry, Physician Assistant at SCI-Albion ("Mowry"); John Tiller, Counselor at SCI-Albion ("Tiller"); and Carla Webb, Counselor at SCI-Albion ("Webb"). [ECF No. 15]. Plaintiff thereafter filed a second amended complaint against the same Defendants named in his previous amended complaint. [ECF No. 38].[3] The Court construes the second amended complaint as the operative complaint in this case. For ease of reference, Defendants Baker and Telega will be referred to collectively as "Medical Defendants," and all other Defendants, excluding Defendant Mowry,[4] will be referred to as "DOC Defendants."

In his *pro se* second amended complaint, Plaintiff raises a number of claims, including: (i) retaliation claims against Defendants Hall, Giroux, Webb, Tiller, and Young; (ii) Fourteenth Amendment due process claims against the DOC Defendants challenging allegedly false misconducts and faulty disciplinary proceedings, and the denial of parole; (iii) an Eighth amendment claim of verbal harassment against the DOC Defendants; (iv) an Eighth Amendment claim of deliberate indifference to health and safety against Defendants Hall and Giroux; (v) a Fourteenth Amendment equal protection claim against the DOC Defendants; (vi) a conspiracy claim against Defendants Beard, Sobina, Giroux, and Hall, pursuant to 42 U.S.C. §§

---

[3]

Since Plaintiff failed to name the original Defendants in either of his subsequent amended complaints, Defendants DOC, SCI-Albion, SCI-Forest, and the unnamed John and Jane Does have been terminated from this case.

[4]

The docket entries in this case reveal that Defendant Mowry was never served in this case and no attorney has entered an appearance on her behalf.

1985 and 1986; (vii) an Eighth Amendment claim of deliberate indifference to serious medical needs against Defendants Sobina, Giroux, Overton, Baker, Telega, and Mowry; (viii) retaliation claims against the Medical Defendants; (ix) a claim under the Americans with Disabilities Act ("ADA"); and (x) state law claims of medical malpractice/negligence and intentional infliction of emotional distress.  All Defendants are sued in their individual capacities only. (ECF No. 38, Second Amended Complaint, at ¶¶ 2-11).

On November 3, 2010, the DOC Defendants filed a motion to dismiss second amended complaint [ECF No. 39], arguing, *inter alia,* that Plaintiff has failed to state a claim upon which relief may be granted.  The Medical Defendants filed their own motion to dismiss second amended complaint on November 5, 2010 [ECF No. 41], arguing that: (i) all of Plaintiff's claims, other than his Eighth Amendment claim for failure to treat an e-coli infection, should be dismissed due to Plaintiff's failure to exhaust his administrative remedies; (ii) Plaintiff's Eighth Amendment claim for failure to treat his Hepatitis C condition is barred by the applicable statute of limitations; (iii) Plaintiff's claims against Defendant Baker should be dismissed for lack of personal involvement; and (iv) Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff has since filed a brief in opposition to each motion. [ECF Nos. 44, 45].  This matter is now ripe for consideration.

**B.**     **Standards of Review**

**1.**     **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355

U.S. 41 (1957)).  <u>See also</u> <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009)
(specifically applying <u>Twombly</u> analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the
facts as set forth in the complaint.  <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>,
394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906
(3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.
<u>Twombly</u>, 550 U.S. at 555, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S.  265, 286 (1986).  "Factual
allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550
U.S. at 555.  Although the United States Supreme Court does "not require heightened fact
pleading of specifics, [the Court does require] enough facts to state a claim to relief that is
plausible on its face."  <u>Id</u>. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a
'showing' rather than a blanket assertion of an entitlement to relief."  <u>Smith v. Sullivan</u>, 2008
WL 482469, at *1 (D.Del. February 19, 2008) <u>quoting</u> <u>Phillips v. County of Allegheny</u>, 515
F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery
will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 234, <u>quoting</u> <u>Twombly</u>,
550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases,
as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient
> factual matter" to show that the claim is facially plausible.  This then
> "allows the court to draw the reasonable inference that the defendant is
> liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  **First,
> the factual and legal elements of a claim should be separated.  The
> district court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a district**

> **court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."  In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief.** A complaint has to "show"
> such an entitlement with its facts.  As the Supreme Court instructed in
> *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer
> more than the mere possibility of misconduct, the complaint has alleged
> - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  This
> "plausibility" requirement will be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations

omitted).


### 2.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers"  Haines v. Kerner, 404 U.S. 519, 520 (1972).  If the

court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it

should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  See

Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414

F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and

should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d

360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all

allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d

Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.

1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906

F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will

consider facts and make inferences where it is appropriate.

<u>**C.**</u>      <u>**Discussion**</u>

    <u>**1.**</u>      <u>**Claims v. DOC Defendants**</u>

        <u>**a.**</u>      <u>**Retaliation Claims**</u>

Plaintiff claims that he suffered many adverse consequences at the hands of various DOC Defendants in retaliation for his verbal and written complaints and grievances.  In particular, Plaintiff claims that the following named Defendants unlawfully retaliated against him for exercising his constitutional rights, in the following ways:  (i) Defendants Hall and Giroux filed an allegedly false misconduct against him on or about August 7, 2008, which resulted in a sanction of 45 days of disciplinary custody; (ii) Defendants Tiller and Webb filed an allegedly false misconduct against him on or about September 3, 2009; (iii) Defendants Young and Tiller refused to process his applications for halfway house placement; and (iv) Defendant Tiller deliberately omitted from his parole package that he completed recommended programming, which resulted in the denial of parole and/or halfway house placement.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  <u>See</u> <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003), <u>quoting</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:
    1) the conduct in which he was engaged was constitutionally protected;

    2) he suffered "adverse action" at the hands of prison officials[5]; and

---

    [5]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  <u>Allah v. Al-Hafeez</u>, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), <u>quoting</u> <u>Allah v. Seiverling</u>, 229 F.3d at 225.  <u>See also</u> <u>Dixon v. Brown</u>, 38 F.3d

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[6]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### i.    **Constitutionally Protected Activity**

The Court finds that Plaintiff has met the first prong of his retaliation claims, as voicing complaints and/or filing grievances are constitutionally protected activities.  See Hawkins v. Brooks, 694 F.Supp.2d 434, 442 (W.D.Pa. 2010), citing Herron v. Harrison, 203

---

379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

6

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions.  "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case."  Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

F.3d 410, 415 (6th Cir. 2000)(holding that an inmate has a right under the First Amendment to file grievances against prison staff).

### ii.        Adverse Action

To satisfy the second prong, Plaintiff's allegations regarding the actions of Defendants must rise to the level of adverse action; in other words, Plaintiff's allegations must be sufficient to demonstrate that the alleged actions would deter a person of ordinary firmness from engaging in the protected activity of filing a grievance.  "Unless the claimed retaliatory action[s] [are] truly 'inconsequential,' the plaintiff's claim should survive a motion for judgment as a matter of law." Tate v. Donovan, 2003 WL 21978141 at *4 (E.D.Pa. Aug. 14, 2003), citing, Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002).

With regard to Plaintiff's first retaliation claim, this Court finds that a reasonable jury could determine that the filing of allegedly "false" misconducts, which resulted in Plaintiff being sanctioned to disciplinary confinement, would be sufficient to deter a person of ordinary firmness from engaging in constitutionally protected activity.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002)(holding that prisoner's allegation that he was falsely charged with misconducts in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)(holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).  Furthermore, the allegedly retaliatory acts of refusing to process halfway house applications and causing the denial of parole are not "truly inconsequential" acts, and may be found sufficient to deter a person of ordinary firmness from engaging in constitutionally protected activity.  As a result, Plaintiff has satisfied the second prong of his retaliation claims arising from such acts.

### iii.   Causal Connection

To satisfy the third prong of his retaliation claims, Plaintiff must allege a causal connection between the exercise of his constitutional rights and the Defendants' adverse actions. Plaintiff's allegations make clear that his verbal complaints and/or filing of grievances occurred within, at least, a temporal proximity of the alleged retaliatory conduct, which suggests a causal link sufficient to satisfy the third prong of Plaintiff's retaliation claims against the named Defendants. See Allah v. Al-Hafeez, 208 F.Supp.2d at 535.

Based on the foregoing analysis, therefore, Plaintiff has sufficiently stated prima facie cases of retaliation against Defendants Hall, Giroux, Webb, Tiller, and Young.

The burden thus shifts to said Defendants to demonstrate, by a preponderance of the evidence, that they would have taken the same adverse actions (i.e., filed the challenged misconducts, etc.) regardless of Plaintiff's exercise of his constitutionally protected rights. This they are not able to sustain at this stage of the proceeding.

Accordingly, the DOC Defendants' motion to dismiss Plaintiff's retaliation claims against Defendants Hall, Giroux, Webb, Tiller, and Young will be denied and said claims will be allowed to proceed at this time.

### b.   Fourteenth Amendment Due Process Claims

#### i.   "False" Misconducts and Disciplinary Proceedings

Plaintiff claims that Defendants Hall, Giroux, Webb, and Tiller violated his Fourteenth Amendment right to due process when they issued allegedly false misconduct charges against him, which resulted in his placement in disciplinary custody, and that his due process rights were violated further by the hearing examiners' refusal to allow him to call witnesses at disciplinary proceedings. These claims are without merit.

Initially, the filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process." Flanagan v.

9

Shively, 783 F.Supp. 922, 931 (M.D.Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992), cert denied, 510 U.S. 829 (1993)(citations omitted).  In this case, it appears from Plaintiff's allegations that he was properly notified of the charges associated with each misconduct and was afforded a hearing regarding each of the misconducts.  Thus, Plaintiff was provided with all due process to which he was entitled.  As a result, Plaintiff's claims that Defendants Hall, Giroux, Webb, and Tiller wrote false misconduct reports against him are not cognizable under the Fourteenth Amendment and will be dismissed.

As to Plaintiff's complaints regarding the time he has spent in disciplinary custody, the Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  In Sandin, the Supreme Court considered the question of whether segregated confinement implicated a constitutional liberty interest and concluded that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486.  See also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (placement of a prisoner in administrative custody for a period of 15 months did not impose atypical and significant hardship on prisoner and, thus, did not deprive due process rights).  Thus, the fact that Plaintiff has been found guilty of allegedly false misconducts and sanctioned to minimal terms of disciplinary custody does not implicate a violation of a constitutional liberty interest under the Fourteenth Amendment.  Moreover, the hearing examiners' refusal to allow Plaintiff to call witnesses at his misconduct hearings did not violate his due process rights, since Plaintiff did not have a liberty interest to protect.  Rivers v. Horn, 2001 WL 312236 at *2 (E.D.Pa. Mar. 29, 2001).  Accordingly, Plaintiff's Fourteenth Amendment due process claims against the DOC Defendants will be dismissed.

### ii.    Denial of Parole

Plaintiff claims that the DOC Defendants violated his due process rights when they allegedly caused him to be denied parole.  However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).

Moreover, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[7]  Thus, the Plaintiff does not have a constitutionally-protected liberty interest that arises under state law.  As a result, Plaintiff cannot support a claim based upon a violation of his due process rights related to the denial of parole, and said claim will be dismissed.

### c.    Eighth Amendment Claim of Verbal Harassment

At various times, Plaintiff complains that he was subjected to verbal harassment and threatening remarks from the DOC Defendants.

Assuming these claims are true, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983.  See Wright v. O'Hara, 2004 WL 1793018 at

---

[7]

See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Mickens-Thomas v. Commonwealth, Bd.. of Probation and Parole, 699 A.2d 792 (Pa. Commw. Ct. 1997) (parole is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 637 A.2d 295 (Pa. 1993).

*7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); <u>MacLean v. Secor</u>, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); <u>Murray v. Woodburn</u>, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases).  Thus, Plaintiff's Eighth Amendment claims based upon verbal harassment and threats will be dismissed.

### d.    Eighth Amendment Claim of Deliberate Indifference to Health and Safety

Plaintiff claims that his Eighth Amendment rights were violated by Defendants Hall and Giroux when they classified him on August 7, 2008, and assigned him to a block where he had been called a "fucken Jew" and harassed by skin heads. (ECF No. 38, Second Amended Complaint, at ¶ 44).

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" <u>Hamilton v. Leavy</u>, 117 F.3d 742, 746 (3d Cir. 1997), <u>quoting</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that:  (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk.  <u>Farmer</u>, 511 U.S. at 834-37.

Here, Plaintiff contends that Defendants Hall and Giroux created an unsafe living condition for him by purposely assigning him to a block where he had been harassed by skin heads because of his Jewish faith.  However, similar allegations in other cases have been found

12

insufficient to state an Eighth Amendment failure to protect claim.  For instance, in <u>Albert v. Karnes</u>, 2008 WL 755804 (M.D.Pa. 2008), the plaintiff inmate alleged that a corrections officer made false statements about him to other inmates, which caused the plaintiff to be labeled a "snitch."  As a result, the plaintiff alleged that his life was threatened by other inmates.  Like Plaintiff in this case, the plaintiff in <u>Albert</u> did not allege any physical injury, but claimed damages for fear and emotional injuries stemming from the threats that resulted from the corrections officer's statements.  Upon consideration of the plaintiff's claim, the Middle District Court found as follows:

> Viewing the complaint in the light most favorable to the plaintiff, Albert has failed to state a claim that any defendant was deliberately indifferent to the risk of harm other inmates posed to him as a result of [the correction officer's] alleged statements.  His complaint simply states that his life has been threatened; he does not allege that any named defendant was aware of any substantial risk of serious harm to Albert because of the alleged statements, nor does he allege that defendants disregarded that risk.  As such, Albert has failed to state a claim for relief on this issue.

<u>Albert</u> at *6.  <u>See</u> <u>also</u> <u>Brown v. Ellis</u>, 175 F.3d 1019 (7th Cir, 1999)(holding that failure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment); <u>Babcock v. White</u>, 102 F.3d 267, 272 (7th Cir. 1996)("[h]owever legitimate [plaintiff's] fears may have been, ... it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment").

Based on the foregoing, the Court finds that Plaintiff has failed to set forth a viable Eighth Amendment failure to protect claim resulting from Defendant Hall and Giroux's block assignment.  Accordingly, said claim will be dismissed.

### e.     **Fourteenth Amendment Equal Protection Claim**

Plaintiff also claims that Defendant Hall and Giroux's block assignment violated his

"equal protection under the law for [his] religious beliefs." (ECF No. 38, Second Amended Complaint, at ¶ 49).  This claim is without merit.

The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws."  U.S. Const. Amend. XIV, §1.  All persons "similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. New Jersey, 81 F.3d 135, 1267 (3d Cir. 1996).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause."  Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class."  Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Plaintiff's allegations in this regard fail as he has not alleged any differential treatment between himself and non-Jewish prisoners.  Accordingly, Plaintiff's equal protection claim will be dismissed.

### f.    Conspiracy Claim

Plaintiff claims that Defendants Beard, Sobina, Giroux, and Hall conspired to violate his civil rights under 42 U.S.C. §§ 1985 and 1986, "when they acquiesce[d] in the false charges placed against [him], to keep [him] from submitting evidence against them in district court, for malpractice, negligence, and murder allegations [he has] made, by placing [him] in the hole under false charges without doing proper investigations of video surveillance that would have exonerated [him] of said charges, or calling witnesses that would substantiate exculpatory evidence, and prison personnel may be held liable for their failure to act if it causes a constitutional violation." (ECF No. 38, second Amended Complaint, at ¶ 80).

In order to state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy;

(2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any persons or class of persons ... [of] the equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Ridgewood Bd. of Education v. N.E., 172 F.3d 238, 253-54 (3d Cir. 1999), quoting Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Here, Plaintiff has failed to make any allegation that Defendants' alleged "conspiracy" was motivated by racial or class based animus sufficient to maintain a conspiracy claim under § 1985.  See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)(42 U.S.C. § 1985(3) prohibits conspiracies predicated upon "racial, or perhaps otherwise class-based, invidiously discriminatory animus").  Thus, Plaintiff's conspiracy claim against Defendants will be dismissed.  In addition, because a § 1985 claim is a prerequisite for an action under 42 U.S.C. § 1986, Plaintiff's Section 1986 claim will also be dismissed.[8]

### g.      Eighth Amendment Deliberate Indifference to Serious Medical Needs Claim Against Defendants Sobina, Giroux, and Overton

Plaintiff claims that, along with the Medical Defendants, DOC Defendants Sobina, Giroux, and Overton were deliberately indifferent to his serious medical needs.  This claim cannot stand.

In Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993), the Third Circuit held that non-medical prison officials[9] cannot be considered deliberately indifferent simply because they

---

[8]

It is unclear whether Plaintiff is also asserting a conspiracy claim against the Medical Defendants under 42 U.S.C. §§ 1985 and 1986; however, to the extent he is making such a claim, it will be dismissed, as well, for the same reasons discussed herein.

[9]

As Health Care Administrator, Defendant Overton is considered a non-medical prison official in the context of a Section 1983 denial of medical care claim.  See Spencer v. Beard, 2010 WL 608276, *4 n. 5 (W.D.Pa. Feb. 17,

failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison medical staff. Id. at 69. Here, Plaintiff's allegations clearly indicate that he was being treated by the Medical Defendants. Thus, Plaintiff has failed to establish that Defendants Sobina, Giroux, and Overton were deliberately indifferent to his serious medical needs, and his Eighth Amendment medical needs claim against them will be dismissed accordingly.

## 2. Claims v. Medical Defendants

### a. Exhaustion of Administrative Remedies

The Medical Defendants argue that Plaintiff has failed to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), with regard to all claims other than his claim for failure to properly treat an e-coli infection.

### i. The Exhaustion Requirement

Section 1997e(a) of the PLRA provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id[10] (emphasis added).

---

2010), citing Hull v. Dotter, 1997 WL 327551, *4 (E.D.Pa. June 12, 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. Dec. 1, 1995).

[10]

It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[11]  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[12]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."  Id. at 83; see also Spruill v. Gillis,  372 F.3d 218, 228-29 (3d Cir. 2004)

---

[11]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that ¢1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[12]

There is no "futility" exception to the administrative exhaustion requirement.  Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").  See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

(utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### ii.      The Administrative Process Available to State Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 107 U.S. at 217.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages.  First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days.  Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days.  Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days.  See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### iii.      Analysis

In support of their claim that Plaintiff has failed to exhaust his administrative remedies,

the Medical Defendants have submitted the Declaration of Tracy L. Williams, Assistant Chief

Grievance Officer in the DOC's Grievance Review Office, who declares, in pertinent part, as

follows:

> 12.   Based upon my review of the grievance records for [Plaintiff], I
> can conclude [sic] provide the following information with respect
> to the grievances filed by [Plaintiff]:
>
>> a.   [Plaintiff] filed grievance #247278 relative to failure to
>> provide treatment for MRSA and an infection with a boil
>> under his arm and scarring to his heart valve.  This
>> grievance and appeal was denied for failure to list an
>> incident date and failure to provide proper documentation
>> for review of the appeal.
>
>> b.   [Plaintiff] filed grievance #281624 relative to a complaint
>> that the medical staff failed to treat an ear infection and a
>> rash on his leg and bleeding from his lower bowel.  This
>> appeal was dismissed as untimely.
>
>> c.   [Plaintiff] filed grievance #224854 relative to a failure to
>> grant him bottom bunk status due to conditions of
>> hepatitis; end stage liver failure; headaches, fatigue,
>> exhaustion, dislocated shoulder, kidney pain, stomach
>> rupture and prolapsing hemorrhoids.  This grievance was
>> denied pursuant to DC-ADM 804 Policy Guidelines, as
>> [Plaintiff] failed to provide evidence that he was affected
>> by a department or facility action or policy.
>
> 13.   [Plaintiff] filed grievance #225328 for a failure to receive proper
> eye glasses; failure to treat an infection, and due to the fact that he
> was required to go to the Medical Department to obtain his
> antibiotics three times a day.  He further grieved retaliation for
> submitting the grievance and Daniel Telega's failure to assist him
> with obtaining bottom bunk status.  This grievance was denied
> pursuant to DC0ADM 804 Policy Guidelines, as the appeal was in
> excess of the two pages allowed by DOC policies.

(ECF No. 42-2, Declaration of Tracy L. Williams, at ¶¶ 12-13).

Absent from Ms. Williams' Declaration, however, is any definitive statement that

Plaintiff did not fully exhaust his administrative remedies with regard to the claims raised in this

case.  In fact, it is not at all clear whether the four referenced grievances were the only

grievances Plaintiff filed with regard to the treatment of his medical conditions, or whether

those were simply the grievances that were found to be unexhausted.  Thus, Ms. Williams'

Declaration fails to provide a sufficient basis upon which this Court may conclude that Plaintiff failed to exhaust his administrative remedies.

Moreover, Plaintiff has alleged in his second amended complaint that he was hindered in his ability to fully utilize the administrative remedy process. (See ECF No. 38-1, Second Amended Complaint, Exhibit A, at ¶ 63).  The Third Circuit has invariably held that interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process.  Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." ).  See also Berry v. Klem, 283 Fed. Appx. 1, 5 (3d Cir. March 20, 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance.  While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. Feb. 20, 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC-ADM 804 was never "available" to Brown within the meaning of 42 U.S.C. § 1997e.").

It is of no moment to this Court that the Medical Defendants were not the individuals who allegedly hindered or thwarted Plaintiff's efforts to exhaust.  This Court will not permit the Medical Defendants to legally benefit from the alleged bad acts of the DOC Defendants.  Accordingly, The Medical Defendants' motion to dismiss Plaintiff's claims based upon his failure to exhaust administrative remedies will be denied.

### b.     Statute of Limitations

The Medical Defendants argue that Plaintiff's claim that they failed to treat his Hepatitis C condition is barred by the applicable statute of limitations and should be dismissed.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions.  However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted).  In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 claim must be filed no later than two years from the date the cause of action accrued. See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996).  Furthermore, a claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based."  Sameric, 142 F.3d at 599.

Here, Plaintiff's original Complaint was filed on June February 1, 2010; however, it was apparently signed by Plaintiff on January 26, 2010.  Thus, for purposes of applying the statute of limitations, this Court will treat January 26, 2010, as the relevant filing date pursuant to the prison mailbox rule.  See Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa.Super. 2001), citing Commonwealth v. Little, 716 A.2d 1287 (Pa.Super. 1998)(in determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]").  Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to January 26, 2008, is barred by the statute of limitations.

The Medical Defendants argue that Plaintiff's Eighth Amendment claim that they failed to treat his Hepatitis C condition first arose in 2002, when Plaintiff claims he knew of the

injuries that the alleged failure to treat his condition was causing him. (See ECF No. 38, Second Amended Complaint, at ¶ 6 of p. 24 of "Exhibit A").  In response, Plaintiff contends that his conditions of confinement claim is of a continuing nature and encompasses the entire period he was in custody at SCI-Albion.

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Brenner v. Local 514, United Broth. of Carpenters and Joiners of America, 927 F.2d 1283, 1295 (3d Cir. 1991).  Here, the lack of medical treatment of which Plaintiff complains is generally alleged to have taken place throughout his period of incarceration at SCI-Albion, which ended on or about January 1, 2010.  Thus, the Court finds that Plaintiff's Eighth Amendment deliberate indifference claim for failure to treat his Hepatitis C condition is timely and will be addressed on its merits.

### c.      Personal Involvement of Defendant Baker

The Medical Defendants contend that Plaintiff's claims against Defendant Baker should be dismissed because Plaintiff has failed to "identify any personal involvement of Dr. Baker, other than his supervisory role." (ECF No. 42, Medical Defendants' Brief, at p. 11).  The Court disagrees.

Although the Medical Defendants are correct that many of Plaintiff allegations against Defendant Baker refer to him in his supervisory capacity, Plaintiff also makes numerous allegations generally referring to the "Medical Defendants'" failure to treat his medical ailments.  Moreover, Plaintiff clarifies in his response to the Medical Defendants' motion to dismiss that he "conversed with [Defendant] Baker a number of times when there was a question of [Plaintiff's] treatment and [Plaintiff] had to contend with [Defendant] Telega about not providing it, such as with the pain in [Plaintiff's] ears or the many staphylococcus infections [Plaintiff] had to endure extremely long lengths of time before treatment was finally

rendered...."  These allegations sufficiently implicate Defendant Baker's involvement, at the pleading stage.  Thus, the Medical Defendants' motion to dismiss Plaintiff's claims against Defendant Baker based upon his lack of personal involvement will be denied at this early stage of the proceeding.

### d.      Eighth Amendment Deliberate Indifference Claim

Plaintiff claims that the Medical Defendants were deliberately indifferent to his multiple medical conditions, including:

1.     Hepatitis C (ECF No. 38, Second Amended Complaint, at ¶¶ 29, 44; ¶¶ 1, 3 of p. 23; ¶ 5 of p. 24; ¶ 6 of p. 25; ¶ 12 of p. 26; ¶¶ 52-55 of p. 37; and ¶ 70 of p. 42);

2.     Deviated septum (Id. at ¶ 12 of p. 26; ¶ 27 of p. 31; ¶ 70 of p. 42);

3.     Sleep apnea (Id. at ¶ 12 of p. 26);

4.     Liver inflammation and pain (Id. at ¶¶ 15, 52, 83 of Exhibit "A");

5.     Dislocated shoulder (Id. at ¶ 12 of p. 27);

6.     Urethral stricture due to e-coli infection (Id. at ¶ 12 of p. 26);

7.     Damaged heart valves (Id. at ¶¶ 46-47 of p. 35);

8.     Vision problems caused by incorrect glasses (Id. at ¶¶ 27, 58 of Exhibit "A");

9.     Migraine and viral headaches (Id. at ¶ 12 of p. 26; ¶ 70 of p. 42);

10.    Stomach rupture (Id. at ¶ 12 of p. 26);

11.    Bacterial and fungal infections (Id. at ¶ 2 of p. 23; ¶ 13 of p. 27);

12.    MRSA (Id. at ¶ 2 of p. 23; ¶ 28 of p. 31);

13.    Ear infections (Id. at ¶ 13 of p. 27);

14.    Unusual finding on thyroid (Id. at ¶ 50 of p. 37);

15.    Overload of iron in his blood (Id. at ¶ 50 of p. 37); and

16.    Bleeding in commode and prolapsed hemorrhoids (Id. at ¶ 37 of p. 33; ¶ 43 of p. 34; ¶ 52 of p. 37).

Plaintiff also claims that Defendant Telega falsified medical records; made him take medications at the medication window, as opposed to providing him with the medications to take on his own; and denied his request for the medication Interleukin 10. (Id. at Exhibit "A"). He claims further that the Medical Defendants denied him a special diet due to his intestinal condition. (Id.).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). The key question is "whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, the Medical Defendants argue that Plaintiff's deliberate indifference claim must be dismissed because he "has failed to plead that [the Medical Defendants] knew of an excess risk to his health regarding the various conditions that he has claimed (with exception of the Hepatitis C condition) and knew that risk could result in serious harm." (ECF No. 42, Medical Defendants' Brief, at p. 10). The Court disagrees.

Deliberate indifference to a serious medical need[13] involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).  Plaintiff has alleged that each of these forms of deliberate indifference occurred in one form or another at various times throughout his confinement at SCI-Albion.  For instance, Plaintiff alleges that he was "denied and delayed treatment for many fungal and other bacterial infections the Medical Defendants refuse to identify, for extremely long and bitter durations of time before treatment was rendered at all, with the symptoms of boils on my skin, blood filling commodes, fatigue and fainting, and rashes on my skin....  In the interim ... my health has been impaired to the point that their previous statement of immune system impairment became true, such as painful ear infections that they delayed treatment for until the pain was excruciating, and recurrence of an e-coli infection in my urinary track [sic] that was ignored until I felt that death was eminent [sic]...." (ECF No. 38-1, Plaintiff's Second Amended Complaint, Exhibit A, at ¶ 13).  Many other allegations of a similar nature are set forth throughout 66 paragraphs of the second amended complaint. (<u>See</u> <u>Id</u>. at ¶ 1-66).  These allegations sufficiently state a cognizable claim of deliberate indifference at the pleading stage.  Although proof of these claims is far removed from successfully pleading them, it is appropriate at this stage to deny the Medical Defendants' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim.

---

13

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth County Correction Institute Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).

### e.      Retaliation Claims

Plaintiff alleges that the Medical Defendants "acted in a recklessly retaliatory manner without restraint, especially after the first two misconducts, ... when they denied medical treatment for serious and dangerous disease infections, or chronic infections," in response to "the many grievances concerning these issues..." (ECF No. 38-1, Second Amended Complaint, at "Exhibit A," ¶ 59).  Plaintiff alleges further that the Medical Defendants retaliated against him be denying him a lower bunk status to accommodate his medical conditions because he filed grievances against the medical department.

The Medical Defendants seek to have these claims dismissed solely on the basis that "Plaintiff has not shown that the grievances that he filed were linked to the alleged adverse action taken against him." (ECF No. 42, Medical Defendants' Brief, at p. 17).  He has, however, alleged such a causal connection, which is sufficient at this stage of the proceeding.  Accordingly, the Medical Defendants' motion to dismiss Plaintiff's retaliation claims against them will be denied.

### f.      Americans With Disabilities Act Claim

Plaintiff claims that, under the ADA, he has been denied treatment for hepatitis C; bottom bunk status; corrective therapy for his deviated septum; pain management for "chronic and breakthrough pain in liver, and migraines;" and a z-code.  This claim is without merit.

Title II of the ADA provides:
> "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  "State prisons fall squarely within the statutory definition of 'public entity'" under Title II, and therefore this provision applies to state prisoners such as Plaintiff while they

are incarcerated.  <u>Pennsylvania Department of Corrections v. Yeskey</u>, 524 U.S. 206, 210 (1998).

However, an ADA claim under Title II may be brought only against a public entity, which, in

this case, is the DOC.  As a result, Plaintiff's ADA claim against all the Medical Defendants

must be dismissed.

### g.      Medical Negligence/Malpractice Claim

The Medical Defendants seek dismissal of Plaintiff's medical negligence/malpractice

claim because Plaintiff failed to file a certificate of merit as required by Pennsylvania Rule of

Civil Procedure 1042.3, which provides:

> In any action based upon an allegation that a licensed professional
> deviated from an acceptable professional standard, the attorney for the
> plaintiff, or the plaintiff if not represented, **shall file with the
> complaint or within sixty days after the filing of the complaint, a
> certificate of merit signed by the attorney or party** ...

Pa.R.C.P. 1042.3(a)(emphasis added).  The certificate of merit must state either:  (1) that an

appropriate licensed professional has opined in writing that there is a reasonable probability that

the defendant's care did not measure up to professional standards and caused the plaintiff's

injury; (2) that the claim against the defendant is based on respondeat superior (in which case,

the plaintiff must obtain an opinion from an appropriate licensed professional that there is a

reasonable probability that the care provided by the defendant's agents did not measure up to

professional standards and caused the plaintiff's injury); or (3) that expert testimony is

unnecessary to the plaintiff's claim.  Pa.R.C.P. 1042.3(a)(1-3).

Rule 1042.3 applies regardless of whether state law claims are brought under

supplemental jurisdiction or under diversity jurisdiction, as here.  See <u>Rodriguez v. Smith</u>, 2005

WL 1484591 at * 7 n. 13 (E.D.Pa. June 21, 2005).   Moreover, federal courts within this district

have uniformly held that Rule 1042.3 is a substantive rule of law that must be complied with by

a plaintiff bringing a diversity professional negligence suit in a federal court sitting in

Pennsylvania.  <u>See</u>, <u>e.g.</u>, <u>Iwanejko v. Cohen & Grigsby, P.C.</u>, 249 Fed.Appx. 938, 944 (3d Cir. 2007)(holding that district court "correctly applied Rule 1042.3 as substantive state law"); <u>Bond v. Rhodes</u>, 2008 WL 763737 at *3 (W.D.Pa. Mar. 20, 2008)(dismissing professional negligence claim based upon Plaintiff's failure to comply with Rule 1042.3); <u>Stroud v. Abington Memorial Hosp.</u>, 546 F.Supp.2d 238, 248 (E.D.Pa. 2008)(holding that "Federal courts in Pennsylvania have uniformly held that the [certificate of merit] requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"); <u>Rodriguez</u> at *7 (holding that "Rule 1042.3 should be applied by federal courts as controlling substantive law" and dismissing professional negligence claim, without prejudice, due to plaintiff's failure to fully comply with the rule).  Where a plaintiff fails to timely file a certificate of merit under Rule 1042.3, the defendant(s) may seek dismissal of the claim.

In this case, it is undisputed that Plaintiff did not submit a certificate of merit within the sixty (60) days required by Rule 1042.3.  In fact, Plaintiff did not obtain the required certificate even after the filing of the instant motion to dismiss, which gave him notice that one was needed.  Thus, the Medical Defendants are entitled to have Plaintiff's medical negligence/malpractice claim against them dismissed.

### h.    Intentional Infliction of Emotional Distress

The Medical Defendants have moved for dismissal of Plaintiff's pendent state law claim of intentional infliction of emotional distress in the event his federal claims are dismissed. However, since this Court has determined that Plaintiff has sufficiently stated Eighth Amendment and retaliation claims against the Medical Defendants, Plaintiff's claim of intentional infliction of emotional distress against the Medical Defendants will also survive at this stage of the proceeding.

### 3.    Defendant Mowry

28

The Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so.  Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at  28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis.  See 28 U.S.C. §1915(e)(2)[14].  Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language.  See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim.").  In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under  28

---

[14]

Title 28 U.S.C. §1915(e)(2) provides:  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, Defendant Mowry was never served in this case, in contravention of this Court's service orders, and she has not had an attorney enter an appearance on her behalf. As a result, Defendant Mowry will be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as she was not served within 120 days of the date(s) she was named as a Defendant in this case.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEVEN SMITH,**<br>      **Plaintiff** )<br>                     )<br>**v.**                  )<br>                     )<br>**THE PENNSYLVANIA DEPARTMENT** )<br>**OF CORRECTIONS, et al.,** )<br>      **Defendants.** ) | **C.A. 10-22 Erie**<br><br>**Magistrate Judge Baxter** |

## <u>ORDER</u>

AND NOW, this 30th day of September, 2011,

IT IS HEREBY ORDERED that:

    1.    The motion to dismiss second amended complaint filed by the DOC Defendants [ECF No. 39], is granted in part and denied in part, as follows;

        a.    The motion to dismiss is DENIED as to Plaintiff's retaliation claims against Defendants Hall, Giroux, Webb, Tiller, and Young, and such claims will be allowed to proceed; and

        b.    The motion to dismiss is GRANTED in all other respects, and all remaining claims against the DOC Defendants are hereby dismissed.  Accordingly, the Clerk is directed to dismiss and terminate Defendants Beard, Sobina, and Overton from this case;

    2.    The motion to dismiss second amended complaint filed by the Medical Defendants [ECF No. 41] is granted in part and denied in part, as follows:

        a.    The motion to dismiss is GRANTED as to Plaintiff's ADA, civil conspiracy, and state law medical negligence/malpractice claims, and such claims are hereby dismissed; and

        b.    The motion to dismiss is DENIED in all other respects, and Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim, retaliation claims, and intentional infliction of emotional distress claim shall proceed.

IT IS FURTHER ORDERED that, under the authority granted by the PLRA, Defendant Mowry is hereby dismissed from this case for Plaintiff's failure to have her served within the time period prescribed by Federal Rule of Civil Procedure 4(m).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge